## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LYNN MOORE, *et al.*, | ) | CASE NO: 5:22-cv-01017 |
| | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| SHEARER'S FOODS LLC, | ) | |
| | ) | (Resolves Docs. 18, 40, 43, 49, 50–54) |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on *Plaintiffs' Pre-Discovery Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b)* (the "Motion") filed by Plaintiffs Lynn Moore and Heather Kolm (collectively "Named Plaintiffs"). Doc. 18. Named Plaintiffs seek authorization from the Court to issues notices to potential opt-in plaintiffs in this collective action pursuant to section 216(b) of chapter 29 of the United States Code (the "FLSA"). Defendant Shearer's Foods LLC ("Shearer's") filed its opposition to the Motion. Doc. 40. The parties have also filed replies, responses, and notices of supplemental authority. *See* Docs. 43, 49, 50–54.

## I.    FACTS

Named Plaintiffs initiated this collective action pursuant to the FLSA. They allege that Shearer's employed three companywide policies that led to unpaid overtime for hourly production/manufacturing employees, and thus violations of the FLSA. Doc. 14. First, they indicate these employees were required to don their personal protective equipment ("PPE"), wash their hands, and attend meetings before their shifts began. Doc. 14 at 4–8. Named Plaintiffs allege

that hourly employees were permitted to clock in seven minutes before their shift start, but that these three pre-shift duties lasted longer than that timeframe, therefore employees were not paid for their time and thus are entitled to unpaid overtime compensation. Doc. 14 at 8. Next, Named Plaintiffs allege that hourly employees were required to clock out for 20-minute breaks, which were both interrupted at times and should have been counted as hours worked for purposes of overtime calculations. Doc. 14 at 8–9. Last, they argue that these employees were provided nondiscretionary bonuses that were not included in calculating "regular rates of pay" for purposes of determining overtime rates. Doc. 14 at 9–12. Thereafter, Named Plaintiffs filed the Motion, seeking Court-approved notice be sent to:

> All of Defendant's current and former hourly production/manufacturing employees who were paid for 40 or more hours of work and (i) don and doff personal protective equipment and sanitary gear or otherwise perform mandatory pre-shift anti-contamination steps; (ii) clocked out and back in for at least one short rest break lasting 20 minutes or fewer; and/or (iii) received nondiscretionary bonuses in any workweek beginning 3 years preceding the filing date of this Motion and continuing through final disposition of this case.

Doc. 18 at 1.

In support of their assertion that all hourly production/manufacturing employees are similarly situated, Named Plaintiffs attach their own sworn declarations and pay records, plus the declarations of nine (9) other hourly production/manufacturing employees that worked at four (4) facilities operated by Shearer's. Doc. 18, Exs. 1–12. Shearer's filed its opposition to the Motion, including a sworn declaration of the Vice President for Human Resources. Doc. 40.

In 2023, the Court ordered additional briefing of the matter pending the outcome of *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), which changed the analysis employed by courts in this circuit when deciding whether cases may proceed as collective actions under the FLSA. Named Plaintiffs include an additional sworn declaration with their *Supplement in Support of Pre-Discovery Motion for Conditional Certification and Court-Supervised Notice to*

*Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b)*. Doc. 49. Both parties have filed supplements to their original briefings, noting updates to the law and their arguments surrounding this issue. The declarations provided by Named Plaintiffs collectively note circumstances reflected in the Amended Complaint (Doc. 14) and the Motion (Doc. 18) such as: pre-shift donning responsibilities and huddles, restrictions on clock-in times, requirements to clock in and out for breaks, and bonus payments not included in overtime calculations. The declarations appear to represent various titles and job responsibilities from the production/manufacturing departments at four (4) Shearer's locations. The declaration provided by Shearer's provides, in part, that the policies Named Plaintiffs complain of are not applied companywide. Doc. 40, Ex. 1.

## II.    LAW AND ANALYSIS

The FLSA provides that plaintiffs may litigate federal minimum wage and overtime claims on their own behalf and on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). The overall goal of proceeding as a collective action is to promote "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989). No employee shall actually be joined as a party in the action, however, unless they "consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id*. The statute does not address how other similarly situated employees might learn of the lawsuit, nor how they may learn of their right to decide whether to join in the action.

*Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) altered the legal landscape surrounding FLSA collective actions. In *Clark*, the Sixth Circuit changed the standard of proof that justifies court facilitated notification to putative plaintiffs, rejecting both the "modest showing" standard set forth in precedent, and the stricter "actually similar" requirement

adopted by the Fifth Circuit in *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430, 434 (5th Cir. 2021).

Prior to *Clark*, the Sixth Circuit had long been among those courts that recognized that a "similarly situated" determination is a fact-specific inquiry, dependent on evidence that may be known only to those employees. Therefore, "as a practical matter" a district court cannot "conclusively make 'similarly situated' determinations as to employees who are in no way present in the case." *Clark,* 68 F.4th at 1010. Before *Clark*, the Sixth Circuit, along with many other courts across the country that had adopted a two-stage process for determining whether an FLSA action should proceed as a collective action, would look to the complaint and some modest factual allegations to determine whether there was a colorable basis for the plaintiffs to claim that the putative class was "similarly situated" with regard to any plausibly alleged claims. *See, e.g., Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 547 (6th Cir. 2006). If so, the Court generally permitted opt-in notification and additional discovery. This standard was "fairly lenient" and typically resulted in what was considered to be a "conditional certification" of a class for purposes of notification. Under that framework, the existence of significant individualized issues did not preclude conditional certification at the notification stage. *See White v. MPW Indus. Servs., Inc*., 236 F.R.D. 363, 367 (E.D. Tenn. 2006).

Post-*Clark*, however, the Sixth Circuit no longer recognizes the "modest showing" standard or the concept of "conditional certification." Under the new framework, court facilitation of notice is appropriate when there is a "strong likelihood" that there are other employees who are similarly situated to the plaintiffs. *Clark*, 68 F.4th at 1011. The requisite degree of probability "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance of the evidence." *Id*.

Even though it balked at the concept of conditional certification and lenient notice policies, the *Clark* court still recognized the need for a two-stage process applying one standard for court assisted notification of potential plaintiffs and a more stringent standard for determining which notified and consenting employees are, in fact, similarly situated. Under *Clark*, those employees who are notified and consent to inclusion in the collective action would become a part of the case for discovery purposes, and the latter group would be determined after the benefit of full discovery. Only those employees who, after discovery, are actually determined to be similarly situated will then become actual plaintiffs in the underlying action. *Id*. at 1010-11.

In order to be similarly situated, employees must, at a minimum, be "unified by common theories of defendant's statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enters., Inc*., 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 136, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016). Though some proof may be individualized, proof of the policy or conduct in conformity with the policy should prove a violation as to all plaintiffs. *Id*. The cause of action for all similarly situated employees will have "accrued in approximately the same manner as those of the named plaintiff." *Lewis v. Huntington Nat'l Bank*, 789 F.Supp. 2d 863, 867 (S.D. Ohio 2011). The circumstances of the consent plaintiffs must be similar to that of the original plaintiff(s) but need not be identical. *Id*.; *Foley v. Wildcat Invs*., LLC, 2023 U.S. Dist. LEXIS 120278, 2023 WL 4485571 (S.D. Ohio July 12, 2023). "Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies as the original plaintiffs were." *Clark*, 68 F.4th at 1010. Individualized defenses may be considered at the notice stage when determining whether plaintiffs have shown a strong likelihood of similarity. *Id*. at 1012. Factors that guide the Court's

consideration of whether plaintiffs and other employees are similarly situated include: (1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; and, (3) whether there is evidence of a "widespread" discriminatory plan affecting those plaintiffs, which was maintained by defendants. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (citations omitted).

Named Plaintiffs attach over 10 affidavits from employees that worked at different Shearer's locations throughout the country. Doc. 18, Exs. 1–12; Doc. 49, Ex. 3. The circumstances of declarants are similar in that they are/were hourly production/manufacturing employees and required to don PPE prior to clocking in, sometimes attending pre-shift huddles and clocking in and out for breaks. Most declarants also note various pay bonuses that were allegedly improperly accounted for in the calculation of their overtime pay. Shearer's argues that the Named Plaintiffs cannot prove the alleged violative policies were in use at all facilities because they did not provide affidavits from employees at every facility. Doc. 28 at 15. However, they ignore that employees do not need to endure identical circumstances to be similarly situated. *See Foley,* 2023 U.S. Dist. LEXIS, at *7. Further, Shearer's provided one declaration from its Vice President for Human Resources, but no additional evidence to contradict the assertions made in the employee statements. *See Woods v. First Transit, Inc.*, No. 1:21-cv-739, 2023 U.S. Dist. LEXIS 172284, at *4–6 (N.D. Ohio Sep. 27, 2023) (comparing the evidence submitted by each party and emphasizing that *Clark* set forth an evidentiary standard, not a pleading standard).

Collectively, the Court interprets the affidavits from Named Plaintiffs and several others to indicate a strong likelihood that hourly production and manufacturing employees throughout the company are similarly situated, as it appears the policies surrounding pre-shift donning and

huddles, clock-in restrictions, breaks, and bonus structures applied companywide. Accordingly, the Motion is GRANTED.

### III.    CONCLUSION

For the reasons stated above, *Plaintiffs' Pre-Discovery Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b)* (Doc. 18) is GRANTED.

Having found that notice is appropriate in this matter, the Court must consider the proper notice to be sent out to potential plaintiffs. The parties' briefing has indicated a disagreement over the proposed notice. However, there is no indication that the parties have met and conferred to determine whether a middle ground can be reached so that a notice can be sent that is agreeable to all parties. The parties are therefore instructed to meet and confer. Within ten days of this order, the parties shall file either a joint brief that details an agreed-upon notice or, if agreement cannot be achieved, separate proposed notices. The parties may each submit a brief in support of these opposing notices that shall not exceed five pages.


IT IS SO ORDERED.


<u>March 14, 2024</u>                          <u>     */s/ John R. Adams*                </u>
Date                                          JOHN R. ADAMS
                                              UNITED STATES DISTRICT JUDGE

7